# Illinois Official Reports

## Appellate Court

---

### *Rathje v. Horlbeck Capital Management, LLC*,
### 2014 IL App (2d) 140682

---

| | |
|---|---|
| Appellate Court Caption | S. LOUIS RATHJE, as Trustee of the S. Louis Rathje Trust, Under Trust Agreement Dated February 24, 1984, Plaintiff-Appellee, v. HORLBECK CAPITAL MANAGEMENT, LLC, TODD HORL-BECK, and HCM L.P., Defendants (Cantella and Company, Inc., Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-14-0682 |
| Filed | October 24, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from plaintiff's investment in a hedge fund organized as a limited partnership managed by an independent registered agent of defendant securities broker/dealer, the trial court, in plaintiff's action alleging breach of contract, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and a violation of the Consumer Fraud and Deceptive Business Practices Act and seeking an accounting, properly entered an order conditioning defendant's right to arbitration on compliance with an outstanding discovery order, especially when defendant, which was originally named as a respondent in discovery, spent 2½ years evading the trial court's discovery orders before converting itself into a party defendant; furthermore, in view of the prejudice plaintiff suffered as a result of defendant's tactics, the trial court's finding that defendant waived the right to immediate arbitration was also upheld. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-CH-3589; the Hon. James R. Murphy, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | James H. Knippen and Adam C. Kruse, both of Walsh, Knippen, Pollock & Cetina, Chrtd., of Wheaton, for appellant. |
| | Timothy D. Elliott and Kaitlyn A. Wild, both of Rathje & Woodward, LLC, of Wheaton, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Justices Schostok and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Cantella & Co., Inc. (Cantella), appeals the trial court's order of June 12, 2014, asserting that the court improperly conditioned Cantella's right to arbitrate upon compliance with an outstanding discovery order. We affirm.

¶ 2                              I. BACKGROUND
¶ 3                              A. The Hedge Fund
¶ 4    In October 2002, plaintiff, S. Louis Rathje, as trustee of the S. Louis Rathje Trust, invested in a hedge fund. The hedge fund was organized as a limited partnership, HCM L.P., with Horlbeck Capital Management, LLC, as the general partner. Todd Horlbeck of St. Charles, Illinois, managed the hedge fund. Todd Horlbeck was also an independent registered representative with Cantella, a securities broker/dealer. Under a subscription agreement between plaintiff and HCM L.P., plaintiff was required to open an investor account at Cantella and to deposit into that account an amount equal to his capital contribution to HCM L.P. Cantella then transferred the funds in the account to the partnership. In connection with the investor account at Cantella, plaintiff signed two "suitability update" forms that provided for arbitration of any controversies between plaintiff and Cantella. Plaintiff's total investment in the hedge fund was $1.3 million.

¶ 5    Pursuant to an agreement between Todd Horlbeck and Cantella, the partnership was obligated to use Cantella's services as a broker/dealer with respect to all of the partnership's investments. The agreement between Todd Horlbeck and Cantella further provided that Cantella would establish brokerage accounts with Bear, Stearns & Company (Bear Stearns). From time to time, plaintiff received statements from the partnership purporting to value his share of the partnership's assets. Todd Horlbeck was responsible for calculating that value.

The December 31, 2008, statement valued plaintiff's share of the partnership's assets at approximately $1.4 million. When the partnership was dissolved on April 29, 2009, plaintiff learned that the actual value of his share of the partnership's assets was $421,217.64.

¶ 6                                    B. The Lawsuit

¶ 7        On October 7, 2011, plaintiff filed suit against Horlbeck Capital Management, LLC, Todd Horlbeck, and HCM L.P. (collectively the Horlbeck defendants). In the suit, plaintiff named Cantella a respondent in discovery pursuant to section 2-402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-402 (West 2010)). With respect to the Horlbeck defendants, plaintiff alleged breach of contract, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010)). Plaintiff also asked for an accounting. With respect to Cantella, plaintiff alleged that it had actual and constructive possession of evidence that plaintiff needed to prove his claims and that would lead to the discovery of other parties who should be named as defendants. Cantella was served on October 12, 2011. In addition to the complaint and summons in discovery, plaintiff served on Cantella a notice of deposition, interrogatories, and a request for documents. Cantella's response and deposition were due in November 2011.

¶ 8                      C. The Two-and-a-Half-Year Discovery Wrangle

¶ 9        According to an affidavit furnished by plaintiff's counsel, shortly after Cantella was served, Cantella's attorney requested an extension of time in which to respond to discovery. Plaintiff's counsel agreed to a one-month extension. When Cantella had not provided any discovery by mid-December 2011, plaintiff's counsel contacted Cantella's lawyer, who then requested an additional extension. In an email dated January 4, 2012, Cantella's counsel stated that he would send "responses and objections and production" by the end of that week.

¶ 10       According to plaintiff's counsel's affidavit, "a few" days later, Cantella produced six documents, all of which related to the arbitration agreement between plaintiff and Cantella. On January 6, 2012, Cantella filed a "special and limited" appearance and a "motion to quash and for protective order." Cantella argued that all of plaintiff's discovery requests should be quashed because plaintiff had signed documents agreeing to arbitrate "all controversies that may arise between" plaintiff and Cantella. The trial court denied the motion on April 10, 2012, on the ground that seeking discovery from Cantella was not a "controversy." Cantella's position was that even service of a subpoena had to go through arbitration. However, Cantella did not appeal the denial of its motion to quash the discovery requests.

¶ 11       On April 10, 2012, the court ordered Cantella to file objections to plaintiff's discovery requests by May 2, 2012. Cantella never filed any such objections. On May 9, 2012, the court ordered Cantella to comply with written discovery within 14 days. Cantella did not comply. Then, on May 22, 2012, Cantella's counsel withdrew. On May 24, 2012, Cantella's new counsel filed a motion to stay enforcement of the May 9 order, on the basis that Cantella was going to file a motion to certify a question for appeal pursuant to Illinois Supreme Court Rule 308 (eff. Feb. 26, 2010), relating to the arbitration agreement, and intended to file a motion to impose limits on discovery. The court granted Cantella leave to file its motions by the end of the business day on May 30, 2012. On June 12, 2012, the court denied Cantella's request to

certify a question as well as its motions for a protective order and to stay discovery pending the outcome of the Horlbeck defendants' interlocutory appeal, in which the Horlbeck defendants unsuccessfully asserted a right to arbitrate under the provision in the agreement between Cantella and plaintiff. *Rathje v. Horlbeck Capital Management, LLC*, 2012 IL App (2d) 120510-U. The court then ordered Cantella to comply with discovery by July 3, 2012.

¶ 12     According to plaintiff's counsel's affidavit, he and Cantella reached an agreement on July 2, 2012, to allow Cantella two additional weeks to produce its discovery responses. In exchange, Cantella allegedly agreed to extend the period in which plaintiff would have to convert Cantella to a party defendant. However, according to the affidavit, on July 10, 2012, Cantella reneged on the agreement. Instead, Cantella proposed a "rolling" production of 50,000 documents. The court ordered a rolling production, and Cantella produced 597 pages. Cantella answered plaintiff's interrogatories on July 17, 2012. Cantella did not thereafter complete its rolling production.

¶ 13     On August 14, 2012, Cantella filed a motion to terminate its status as a respondent in discovery, on the theory that the trial court lost jurisdiction over it when plaintiff did not timely seek to convert it to a party defendant. On August 16, 2012, plaintiff filed a motion for sanctions based on Cantella's failure and refusal to comply with discovery. On September 6, 2012, the court denied Cantella's motion to terminate and granted plaintiff's motion for sanctions. On September 14, 2012, Cantella agreed to a finding of contempt and appealed. This court affirmed the sanctions as modified in our order. *Rathje v. Horlbeck Capital Management, LLC*, 2013 IL App (2d) 121120-U, ¶ 24.

¶ 14     On June 25, 2013, Cantella filed a motion to refer the discovery dispute to arbitration. The court treated this as a motion to reconsider the April 10, 2012, denial of the original motion to quash the discovery requests and denied it. On July 19, 2013, the court ordered Cantella "to make a full document production immediately, recognizing that such production was to have been made by September 14, 2012." The court further ordered that Cantella was to be fined $250 per day for every day after July 19, 2013, that it failed to tender a complete production of documents. Instead of producing documents, Cantella filed a motion to vacate the sanctions. The motion was based on the dismissal of plaintiff's second amended complaint against the Horlbeck defendants. The court denied Cantella's motion and allowed plaintiff to file a motion to reconsider the dismissal. The court later granted plaintiff's motion to reconsider in part. On December 4, 2013, the court again sanctioned Cantella for its refusal to produce documents and ordered production by December 19, 2013.

¶ 15     On December 19, 2013, Cantella moved to convert itself to a party defendant. The court granted the motion, and the written order provided that Cantella was to produce documents the same day. Cantella complied and produced 33,000 heavily redacted pages.

¶ 16     On April 8, 2014, plaintiff filed a third amended complaint, this time naming Cantella as a party defendant. Plaintiff asserted causes of action against Cantella for negligent supervision of the Horlbeck defendants, constructive fraud, unjust enrichment, and breach of contract on the theory that plaintiff was a third-party beneficiary of a contract between Todd Horlbeck and Cantella. On May 1, 2014, plaintiff filed a motion to compel Cantella to produce unredacted documents. On May 8, 2014, Cantella filed a motion to compel arbitration and stay the proceedings. The basis of the motion to compel arbitration was the shift in Cantella's status from a respondent in discovery to a party defendant. Now, Cantella asserted, a controversy existed between it and plaintiff, and, under the arbitration agreement

that plaintiff signed, all controversies were to be arbitrated. The court heard both motions on June 12, 2014.

¶ 17                          D. The June 12, 2014, Hearing and Order

¶ 18    On June 12, 2014, Cantella's attorney explained to the court that Cantella had converted itself from a respondent in discovery to a party defendant, which was permitted under the Code, because doing so "could get [Cantella] where it needed to be *** such that a controversy would be raised against it that would be arbitrable." The attorney reminded the court that Cantella had produced 33,000 pages such that "Cantella fulfilled largely its obligation to provide discovery in this case." Cantella acknowledged that it owed plaintiff unredacted copies of the documents it had produced and stated that it would comply if the court denied the motion to compel arbitration. In response, plaintiff argued that Cantella waived arbitration altogether by converting itself to a party defendant. "[Cantella] decided [it] wanted to be sued," plaintiff concluded.

¶ 19    Before ruling, the court heard the arguments on both parties' motions–plaintiff's motion to compel production of unredacted documents and Cantella's motion to compel arbitration and stay proceedings. In its ruling, the court stated that Cantella waived arbitration to the extent of "completing what [it] had to do as either respondents [*sic*] in discovery or voluntary defendants [*sic*] in this case up to this point." The court found waiver based on the "unique situation" in which Cantella effectively said "make us [*sic*] a defendant" and "by the way, here's 33,000 pages of documents." The court granted plaintiff's motion to compel production of unredacted documents.

¶ 20    However, the court ruled that Cantella did not fully waive arbitration merely by self-converting from a respondent in discovery to a party defendant. The court stated: "I think that further proceedings against Cantella are arbitratable [*sic*] besides what I am going to retain jurisdiction on." The court further said: "I'm going to grant Cantella's motion [to compel arbitration] *** but on a delayed basis until [it has] complied with the discovery that [it owes] in this case, and so I think under the circumstances that I have the jurisdiction to do that ***." The court reiterated that "any arbitration will be delayed until the compliance with previous orders of this court" relating to discovery. The court doubted the need for all the redactions in the 33,000 pages of documents and opined that Cantella had been using the arbitration agreement as a litigation strategy to avoid discovery. To stem further use of the arbitration agreement as a strategy to avoid disclosure, the court stated that it was "conditioning that arbitration for further consideration if there is no compliance." The court decided to wait "to see whether there is compliance before fully sending this to arbitration and staying the proceedings against Cantella."

¶ 21    On June 12, 2014, the court entered a written order. Paragraph 1 of the court's written order required Cantella to produce unredacted copies of the previously produced 33,000 documents by July 10, 2014. Paragraph 2 stated: "Defendant Cantella's motion to compel arbitration is conditionally granted, subject to Cantella's compliance with paragraph (1) above." Paragraph 3 related to the Horlbeck defendants. Paragraph 4 set July 16, 2014, for status on Cantella's compliance with discovery and for "entry of the order granting Cantella's motion to compel arbitrations [*sic*]." On July 10, 2014, Cantella filed a notice of interlocutory appeal.

¶ 22                                II. ANALYSIS

¶ 23        We must first address our jurisdiction. In Cantella's jurisdictional statement, it asserts that jurisdiction is proper under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010), which allows interlocutory appeals from orders granting, modifying, refusing, dissolving, or refusing to dissolve injunctions. Cantella maintains that the trial court in effect denied its motion to stay the proceedings when it ordered Cantella to produce further discovery. Plaintiff argues that Cantella's motion to compel arbitration and to stay the proceedings was a mislabeled request for reconsideration of the court's prior rulings denying arbitration, such that the ruling was not an interlocutory order subject to appeal. Additionally, plaintiff contends that the June 12, 2014, order contemplated that an order concerning arbitration would be entered at a later date so that there was no immediately appealable interlocutory order. As an alternative basis for finding that we have jurisdiction, Cantella asserts that the order is appealable pursuant to the Federal Arbitration Act (FAA) (9 U.S.C. § 1 *et seq.* (2006)).

¶ 24        We have no need to consider whether, or how, the FAA impacts our jurisdiction, because we agree with Cantella that we have jurisdiction under Rule 307(a)(1). We disagree with plaintiff that the motion to compel arbitration was a mislabeled motion to reconsider. The motion to compel arbitration plainly stated that it was based on Cantella's changed status from a respondent in discovery to a defendant.

¶ 25        To determine what constitutes an appealable order pursuant to Rule 307(a)(1), courts look to the substance of the action and not the form. *In re A Minor*, 127 Ill. 2d 247, 260 (1989). Orders having the force and effect of injunctions are appealable even if they are called something else. *A Minor*, 127 Ill. 2d at 260. For instance, a "stay" order is synonymous with an injunction. *Allianz Insurance Co. v. Guidant Corp.*, 355 Ill. App. 3d 721, 729 (2005). Similarly, the denial of a motion to stay is treated as the denial of a request for a preliminary injunction. *Hastings Mutual Insurance Co. v. Ultimate Backyard, LLC*, 2012 IL App (1st) 101751, ¶ 28. Here, Cantella moved to compel arbitration and to stay proceedings. While it is true that the court set a future date for entry of an order granting arbitration, the immediate effect of its order compelling further discovery was to deny the motion to stay the proceedings. The court even stated that it would not stay the proceedings as of June 12, 2014, and that the court specifically retained jurisdiction under section 2-402 of the Code.

¶ 26        The next question is whether the order compelling Cantella to produce unredacted copies of the 33,000 pages of documents that it produced in December 2013 involved pure discovery matters that would not be appealable under Rule 307(a)(1). In *Allianz*, we recognized that Illinois courts have rejected the notion that matters involving pure discovery issues are appealable as injunctions. *Allianz*, 355 Ill. App. 3d at 729. Interlocutory ministerial or administrative orders do not come within the realm of injunctive relief and cannot be appealed, because they regulate only procedural details of the litigation before the court. *Allianz*, 355 Ill. App. 3d at 729. For such orders to be appealable, they must also affect the parties' relationship in their everyday activity apart from the litigation. *A Minor*, 127 Ill. 2d at 262. Here, Cantella had previously produced the documents in question, albeit in redacted form. It would seem that the order to produce unredacted copies of the same documents was ministerial or administrative. However, the order to produce unredacted copies impinged on Cantella's right to arbitration in that it delayed arbitration. Arbitration is an activity apart

from the litigation, because, where parties have contracted to have disputes settled by arbitration, it is the arbitrators' view of the facts that they have agreed to accept. *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 18. Consequently, the discovery order affected the parties' relationship apart from the litigation. Therefore, we hold that we have jurisdiction under Rule 307(a)(1). We turn now to the merits.

¶ 27                                    A. Cantella's Contentions

¶ 28    Cantella first contends that the trial court erred in conditioning arbitration on compliance with the court's order to produce unredacted copies of the documents it produced on December 19, 2013. Cantella argues that, once the trial court determined that the substantive dispute was covered by the arbitration agreement, no further discovery was permitted. The record shows that plaintiff opened an investor account with Cantella and deposited certain funds into that account. The arbitration agreement was part of a document updating that investor account. Section 2 of the FAA provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). That the arbitration agreement between the parties was one evidencing a transaction involving commerce is not disputed, although plaintiff denies that the parties' dispute falls within the scope of the arbitration agreement.

¶ 29    Cantella maintains that, because the dispute is subject to the FAA, substantive federal law and decisions of the federal courts are binding on state courts, citing *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 21 (2011) ("This court has recognized that, in construing federal laws, decisions of the federal courts are binding upon this court, to the end that such laws may be given uniform application."). Applying federal law, Cantella concludes that the trial court erred in requiring it to engage in further discovery once the court decided that the matter was subject to arbitration, because the federal courts have held that all pretrial proceedings must be stayed, including discovery, when a dispute is subject to the FAA.

¶ 30    Section 3 of the FAA provides that, "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court *** shall on application of one of the parties stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3 (2006). "[T]he trial of the action" has been understood to include pretrial proceedings, such as discovery, rather than being limited to the trial phase of litigation. *GEA Group AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 415 (7th Cir. 2014). From this, Cantella concludes that the trial court erred in conditioning arbitration on Cantella's compliance with discovery. Further, Cantella concludes, the respondent-in-discovery statute must give way as it is merely a state procedural rule governing discovery and as Cantella self-converted to a party defendant, thereby terminating the applicability of the respondent-in-discovery statute. A trial court's decisions concerning the course and conduct of the discovery process are reviewed for abuse of discretion. *In re Application of the County Treasurer & ex officio County Collector*, 2012 IL App (1st) 112897, ¶ 21. Here, however, resolution of the issues that Cantella raises depends upon our construction of the respondent-in-discovery statute. Issues of statutory

construction are questions of law, which are reviewed *de novo*. *People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419, ¶ 20.

¶ 31  We must determine the relationship between the respondent-in-discovery statute and Cantella's asserted contractual right to limit discovery to that provided for in the arbitration agreement. We first examine the respondent-in-discovery statute. Section 2-402 of the Code provides that a plaintiff in any civil action may designate as respondents in discovery individuals or entities that the plaintiff believes have information essential to the determination of who should properly be named as additional defendants. 735 ILCS 5/2-402 (West 2010). Section 2-402 is used to discover the identity of defendants other than a defendant named in the underlying complaint. *Hadley v. Subscriber Doe*, 2014 IL App (2d) 130489, ¶ 65. Once a person or entity has been named a respondent in discovery and service of process has been properly executed, the court acquires *in personam* jurisdiction over the respondent in discovery for all purposes (*Allen v. Thorek Hospital*, 275 Ill. App. 3d 695, 703 (1995)), and that jurisdiction continues until all issues of fact and law are determined (*Whitley v. Lutheran Hospital*, 73 Ill. App. 3d 763, 766 (1979)). Service on respondents in discovery permits courts to compel discovery from those persons or entities so designated. *Allen*, 275 Ill. App. 3d at 703. A person or entity named as a respondent in discovery is required to respond to the plaintiff's discovery in the same manner as are defendants. 735 ILCS 5/2-402 (West 2010). If the evidence discloses probable cause to add a respondent in discovery as a party defendant, the plaintiff may do so within six months from the time the respondent in discovery was named. 735 ILCS 5/2-402 (West 2010). The six-month period can be extended, as it was here, from time to time, for a failure or refusal of the respondent in discovery to comply with timely filed discovery requests. 735 ILCS 5/2-402 (West 2010). The statute further provides that a person or entity named as a respondent in discovery "may upon his or her own motion be made a defendant in the action, in which case the provisions of this Section are no longer applicable to that person." 735 ILCS 5/2-402 (West 2010).

¶ 32  Here, Cantella was named a respondent in discovery on October 11, 2011, and it was served on October 12, 2011. In January 2012, Cantella moved to quash plaintiff's discovery requests, on the basis of the arbitration agreement. The trial court resolved against Cantella the issue of whether the agreement required arbitration of discovery matters, and it denied the motion to quash. Although Cantella could have immediately appealed that interlocutory order under Rule 307(a)(1) (see *Grane v. Grane*, 130 Ill. App. 3d 332, 334 (1985) (order denying arbitration is appealable pursuant to Rule 307)), it was not required to do so. See *In re Haley D.*, 2011 IL 110886, ¶ 63 (party who wishes to challenge an interlocutory order that is appealable as of right may wait until final judgment and challenge the order at that time). However, having elected not to bring an interlocutory appeal, Cantella was bound to comply with the trial court's discovery orders. Pursuant to section 2-402, respondents in discovery "shall" be required to respond to the plaintiff's discovery in the same manner as are defendants. 735 ILCS 5/2-402 (West 2010).

¶ 33  By December 19, 2013, Cantella still had not produced the documents that plaintiff had requested and that Cantella had at one point agreed to produce. The court's written order of December 19, 2013, reflects that Cantella's "request to invoke the jurisdiction of the court and be converted to a party defendant" was granted. Much has been written about the respondent-in-discovery statute, but there is a paucity of judicial interpretation of the part of the statute that allows respondents in discovery to convert themselves to party defendants. It

certainly was not necessary for Cantella to "invoke the jurisdiction of the court," because the court had acquired jurisdiction over Cantella "for all purposes" when Cantella was served on October 12, 2011. *Allen*, 275 Ill. App. 3d at 703. Its jurisdiction over Cantella continued, uninterrupted, after Cantella self-converted to a party defendant, because, once a court acquires *in personam* jurisdiction, that jurisdiction continues until all issues of fact and law are determined. *Whitley*, 73 Ill. App. 3d at 766 (court retained jurisdiction over physician who was converted to a defendant, because jurisdiction was acquired when the doctor had been served as a respondent in discovery).[1] Thus, although section 2-402 provides that "the provisions of this Section are no longer applicable to" a person or entity that self-converts to a party defendant, we hold that the court retains the power to enforce its discovery orders that were entered when the self-converted person or entity was a respondent in discovery.

¶ 34 If this were not true, the respondent-in-discovery statute could be rendered meaningless. We are mindful that a statute should be construed insofar as possible so that no part of it is rendered superfluous, meaningless, absurd, inconvenient, or unjust. *People v. Single Story House*, 2012 IL App (5th) 110562, ¶ 10. It would be an absurd, inconvenient, and unjust result to allow Cantella to waste over two years of the court's time by hamstringing and stonewalling and then avoid the repercussions of its actions simply by self-converting from a respondent in discovery to a party defendant. Cantella self-converted to a party defendant not because it wanted the court to resolve the dispute on the merits but because it wanted to avoid that result, proceed to arbitration, and wash its hands of its obligations to obey court orders entered while it was a respondent in discovery. In sum, Cantella attempted to use the rules to avoid playing by the rules. Nothing exemplifies this more than its production of 33,000 pages of redacted documents after it self-converted to a party defendant and its subsequent denial of the court's right to order it to produce unredacted copies of those same documents.

¶ 35 It is an elementary principle of law that a court has the inherent power to enforce its orders. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000). The court ordered Cantella to comply with document production by December 19, 2013. The court did not order the production of redacted documents where there was no apparent purpose for the redactions. Therefore, the June 12, 2014, order requiring Cantella to produce unredacted copies of the documents was in practicality an order enforcing its December 4, 2013, order to produce the documents by December 19, 2013. The court had the right and the responsibility to monitor compliance with the December 4, 2013, order, as a party's purported compliance does not discharge its responsibility unless the court finds the compliance acceptable. *Anderson Dundee 53, L.L.C. v. Terzakis*, 363 Ill. App. 3d 145, 157 (2005). In addition, the court has the inherent authority to impose sanctions for the failure to comply with its orders. *Cronin v. Kottke Associates, LLC*, 2012 IL App (1st) 111632, ¶ 39. The purpose of the inherent power to impose sanctions is to vindicate and maintain the integrity of our court system. *Sander v. Dow Chemical Co.*, 166 Ill. 2d 48, 68 (1995).

¶ 36 Under these circumstances, the cases Cantella cites for the proposition that the trial court must stay all discovery upon announcing its intention to grant the motion to compel

---

[1]Even an order compelling arbitration under the FAA does not divest the court, whether state or federal, of jurisdiction. *Frank v. American General Finance, Inc.*, 23 F. Supp. 2d 1346, 1350 (S.D. Ala. 1998).

arbitration are inapplicable. In *Suarez-Valdez v. Shearson Lehman/American Express, Inc.*, 858 F.2d 648 (11th Cir. 1988), the court of appeals held that the district court erred in failing to stay discovery where the defendants moved to stay the action pending arbitration, but it is clear from the context that the motion came before any discovery had been conducted. *Suarez-Valdez*, 858 F.2d at 649-50. Similarly, in *Lummus Co. v. Commonwealth Oil Refining Co.*, 273 F.2d 613, 614 (1st Cir. 1959), the court stayed discovery pending arbitration where no discovery had been undertaken. In *Klepper v. SLI, Inc.*, 45 F. App'x 136, 139 (3d Cir. 2002), an unpublished decision, the court of appeals vacated the district's court's order requiring the completion of discovery, which was entered without a prior ruling on the arbitrability of the underlying stock-option issue. However, it is clear that the defendant sought arbitration before any discovery had been ordered and then immediately appealed the district court's order denying arbitration and ordering discovery. *Klepper*, 45 F. App'x at 138.

¶ 37    Here, Cantella urges that federal law interpreting the FAA shifts to the arbitrators the responsibility for conducting the limited discovery allowed in arbitration. By raising this argument at this juncture, Cantella is doing nothing less than asking us to review the trial court's April 10, 2012, order denying its motion to quash discovery. We refuse to do so. Indeed, none of Cantella's arguments regarding whether the respondent-in-discovery statute applies where there is an agreement to arbitrate are reviewable at this point. That horse has not yet left the barn. As we indicated, Cantella did not seek interlocutory review of the April 10, 2012, order denying the motion to quash, and the instant appeal is from the interlocutory order of June 12, 2014, not from a final judgment. To review the April 10, 2012, order now would go beyond the scope of the instant appeal. An appeal pursuant to Rule 307 does not open the door to a general review of all orders entered up to the date of the interlocutory order that is appealed. *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 73 (2007). Furthermore, as we discuss fully below, Cantella waived the right to arbitrate discovery matters.

¶ 38    We reiterate that the trial court had the authority to enforce its discovery orders that were entered while Cantella was a respondent in discovery, for the reasons stated above. It follows that the court also had the authority to condition arbitration of the merits of the dispute on compliance with its discovery orders. A court has the power to sanction pursuant to its inherent authority to control its docket. *Dolan v. O'Callaghan*, 2012 IL App (1st) 111505, ¶ 65. The recognition of this authority is necessary to prevent undue delays in the disposition of cases, caused by abuses of procedural rules. *Dolan*, 2012 IL App (1st) 111505, ¶ 65. The instant case presents a shocking abuse of the rules by Cantella. It spent 2½ years evading and thwarting the court's orders. Accordingly, we hold that, under these circumstances, the court did not err in conditioning arbitration on compliance with the order to produce unredacted documents.

¶ 39    Next, Cantella argues that the trial court erred in finding that it waived arbitration. Under section 3 of the FAA, the court must stay the proceedings pending arbitration upon the application of a party if the issue involved is referable to arbitration under a written agreement, provided that the applicant for the stay has not defaulted in proceeding with arbitration. 9 U.S.C. § 3 (2006); *Envirex, Inc. v. K.H. Schussler Fur Umwelttechnik GMBH*, 832 F. Supp. 1293, 1295 (E.D. Wis. 1993). Consequently, the threshold question is whether the applicant for the stay has defaulted by waiving its right to arbitration. *Envirex*, 832 F. Supp. at 1295. Federal courts have developed a strong presumption in favor of arbitration and

do not lightly find waiver. *Envirex*, 832 F. Supp. at 1295. For that reason, the party opposing the stay bears a heavy burden of showing that the applicant has waived its right to arbitration by acting in a manner inconsistent with the right to arbitration. *Envirex*, 832 F. Supp. at 1295. For example, a party can waive its right to arbitrate by actively participating in a lawsuit. *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1012 (D. Minn. 2008).

¶ 40    It is not true that, as Cantella argues, the trial court found waiver of the right to arbitrate solely because of Cantella's self-conversion to a party defendant. However, even if the court had so found, it is at least arguable that the court would have been correct. See *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) (party's election to proceed before a nonarbitral tribunal for resolution of a dispute is a presumptive waiver of the right to arbitrate). Rather, the court found waiver based upon the production of 33,000 pages of documents upon Cantella's self-conversion to a party defendant. The court stated that, because of "the unique situation" where "Cantella said make us [*sic*] a defendant and figure out what your cause of action is going to be[,] and by the way here's 33,000 pages of documents that we [*sic*] owed when we were [*sic*] a respondent in discovery," Cantella waived its right to arbitrate discovery matters. Whether Cantella waived its right to arbitration is a legal question, which we review *de novo*. *Household Finance Corp. III v. Buber*, 351 Ill. App. 3d 550, 553 (2004).

¶ 41    Cantella attempts to inject ambiguity into the sequence of events on December 19, 2013, by suggesting that its document production preceded its self-conversion to a party defendant. There is no report of proceedings for that date, but the written order makes clear what occurred relating to the production of the documents. First, the court granted Cantella's request to be converted to a party defendant. Second, the court granted plaintiff leave to file an amended complaint against all "defendants." Third, the court entered and continued plaintiff's request to lift the stay on sanctions against Cantella "in the event full document production" was not made by December 19, 2013.[2] Had Cantella already produced the documents, there would have been no need to continue the matter to monitor its compliance. At the hearing on June 12, 2014, Cantella's counsel made clear that Cantella had produced the documents upon its self-conversion to a party defendant so that plaintiff could decide whether to sue Cantella or dismiss it from the action.

¶ 42    In producing 33,000 pages of documents, which Cantella's attorney described as largely fulfilling Cantella's discovery obligation as a respondent in discovery, Cantella undermined its own strategy to pursue its right to limited discovery under the arbitration agreement. Cantella's voluntary production of 33,000 pages of documents was so inconsistent with its asserted right either to arbitrate all discovery matters or to limit the scope of discovery to what was outlined in the arbitration agreement that it waived such rights. Cantella's production was voluntary in the sense that it was purposeful toward Cantella's own goal of being sued so that a "controversy" would exist. The history of this litigation indicates that Cantella knew how to defy discovery orders and accept being held in contempt when doing so suited its own ends.

---

[2]The order says "12/19/14," which is obviously a scrivener's error as the status date for monitoring Cantella's compliance was January 2, 2014. The parties agree that Cantella made the document production on December 19, 2013, although there is nothing in the record to so reflect.

¶ 43    The entire course of Cantella's conduct demonstrates behavior inconsistent with its asserted right to arbitrate discovery matters. Cantella repeatedly filed delaying motions in its two-year campaign to thwart the court's discovery orders. Cantella argues that it diligently pursued its right to arbitration by asserting it on several occasions. However, Cantella's motion to refer the discovery dispute to arbitration, brought on June 25, 2013, was based on nothing new, and the motion was brought more than a year after the court had denied the motion to quash discovery. The timing of the motion to refer the discovery dispute to arbitration suggests that it was more a ploy to avoid the severe monetary sanctions this court had recently affirmed (*Rathje*, 2013 IL App (2d) 121120-U, ¶ 23) than a sincere effort to obtain arbitration, especially where Cantella's next motion was another attempt to vacate the sanctions. Cantella's third motion addressing arbitration was made a month after plaintiff filed his third amended complaint. Under ordinary circumstances, the delay of a month might not raise eyebrows, but in the present case it was simply more of Cantella's obstreperous behavior, as was its attempt to obtain a certified question after it had decided not to perfect an appeal when it had the opportunity to do so.

¶ 44    Perhaps the best example of Cantella's conduct that was inconsistent with the assertion of its right to arbitrate discovery matters was Cantella's admission to the court, in a document on June 11, 2012, that it could choose to convert itself right then to a party defendant, thereby terminating the application of section 2-402. However, for its own strategic reasons at that time, Cantella chose to remain a respondent in discovery for another year and a half, thus prolonging the process and delaying its ability to seek arbitration.

¶ 45    For these reasons, Cantella's reliance on *Jenkins v. Trinity Evangelical Lutheran Church*, 356 Ill. App. 3d 504 (2005), is misplaced. In *Jenkins*, the court held that the defendants did not waive their right to arbitrate where they raised the issue within a reasonable period after the filing of the complaint and then had "little choice but to participate in the litigation and file pleadings" after the court denied their motion for summary judgment. *Jenkins*, 356 Ill. App. 3d at 508. Here, in contrast, Cantella recognized, at least as of June 2012, that it could choose not to participate any longer as a respondent in discovery. So, while Cantella initially raised the issue of arbitration as soon as it entered the case, unlike the defendants in *Jenkins* it could have chosen not to participate in the litigation, by promptly terminating its status as a respondent in discovery.

¶ 46    We next examine whether plaintiff was prejudiced. In deciding whether a party has waived its arbitration rights, the court also considers whether the opposing party has been prejudiced as a result of the acts purportedly constituting waiver. *Envirex*, 832 F. Supp. at 1296. While the trial court made no specific finding that plaintiff was prejudiced, that finding is implicit in its ruling that a partial waiver of arbitration occurred. Cantella contends that plaintiff could have avoided any alleged prejudice from having to draft a complaint by initiating arbitration, as Cantella argues he was obliged to do. According to Cantella, the time and resources that plaintiff expended in preparing the third amended complaint would have been necessary regardless of whether the dispute pended in court or in arbitration. Even if that were true, had Cantella cooperated with its obligations as a respondent in discovery once the trial court denied its motion to quash plaintiff's discovery requests and it chose not to appeal, or had it immediately appealed the April 2012 denial of arbitration, instead of foot-dragging for over two years, plaintiff would not have incurred the enormous fees he did.

¶ 47     Moreover, Cantella's constant delaying tactics resulted in an unnecessary delay in filing its motion to compel arbitration as a party defendant. Prejudice by reason of delay in making an arbitration demand may rise to the level of a default so as to require denial of a stay of proceedings in favor of arbitration. *In re Mercury Construction Corp.*, 656 F.2d 933, 939 (4th Cir. 1981). Had Cantella converted to a party defendant in June 2012, when it first noted its right to do so, it could have filed its motion to compel arbitration a year and a half earlier than it did. Instead, it carried on with its crusade to flout the court's orders. Even when Cantella finally decided that it was in its interest to produce 33,000 pages of documents, they were so heavily redacted as to make the production useless to plaintiff. Instead of defending the redactions, Cantella admitted at the June 12, 2014, hearing that it owed plaintiff unredacted copies and would produce them if the motion to compel arbitration was denied. Under these facts, and considering that plaintiff never obtained the documents he was entitled to, we hold that plaintiff was prejudiced. Accordingly, the court did not err in finding that Cantella waived its right to immediate arbitration.

¶ 48                                   B. Plaintiff's Contention

¶ 49     Plaintiff contends that the trial court erred in finding that Cantella's waiver of arbitration was only partial. It is plaintiff's position that Cantella's self-conversion to a party defendant waived its right to arbitration altogether, as Cantella requested to be sued. In essence, plaintiff claims that the order of June 12, 2014, was adverse to him. A notice of cross-appeal is mandatory for review of a judgment adverse to the appellee. *Greco v. Coleman*, 176 Ill. App. 3d 394, 400-01 (1988). Here, because plaintiff did not file a notice of cross-appeal, we are not authorized to examine or decide this issue.

¶ 50                                   III. CONCLUSION

¶ 51     For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 52     Affirmed.